A03A1291. NEELY DEVELOPMENT CORPORATION v. SERVICE FIRST INVESTMENTS, INC.
(582 SE2d 200)

BLACKBURN, Presiding Judge.

Service First Investments, Inc. (Service) filed suit against Neely Development Corporation (Neely) primarily to obtain specific performance of a provision in a real estate contract that required Neely to execute a restrictive covenant. After Neely and Service stipulated to the absence of disputed facts, the trial court awarded summary judgment to Service. In this appeal, Neely contends that the trial court misapplied the applicable law, and genuine issues of material fact foreclosed summary judgment. We disagree. The determinative issue is a question of contract law, i.e., whether Neely's obligation to execute a restrictive covenant on Service's behalf survived the real estate closing. After reviewing the controlling documents, we find the obligation did so and affirm.

The dispositive legal issue arose from the following undisputed facts. On June 8, 1999, Service and Neely entered into a written Purchase and Sale Agreement in which Neely agreed to sell certain undeveloped land at the intersection of Highway 34 and Sullivan Road in Coweta County. The parcel was part of a larger tract that

Neely owned and was developing for commercial use. Service acquired the land in order to construct a gasoline service station/convenience store and car wash.

Section 7 (a) of the Agreement entitled "Contingencies," stated: "Buyer's obligations under this Agreement are expressly conditioned upon the following [four numbered provisions to be accomplished by Seller and Buyer before closing]." The second obligation, Section 7 (a) (2), is the one Neely now disputes. It required the "[e]xecution by Seller of a restrictive covenant in favor of Buyer authorizing Buyer to be the only convenience store gas station and automated car wash in the development depicted on Exhibit 'A,' attached hereto and incorporated herein by reference."

At the time of the closing on July 13, 1999, Neely had not fully complied with all the terms of the Agreement. Neely had not executed the restrictive covenant or completed several other required items. Accordingly, Neely and Service executed an Addendum to the Agreement which expressly provided that the unsatisfied obligations in the Agreement would survive the closing. The third paragraph of the Addendum provided:

> Neely and Service have consummated the purchase and sale of real property contemplated by the Agreement (the "Service Property"), but desire to expressly provide that the obligations of each to the other set forth in the Agreement survive such closing and that each of them shall continue to be obligated to the other for any obligations set forth in the Agreement not yet met.

The Addendum specifically stated:

> 1. The Agreement shall survive the closing of the purchase and sale of the Service Property contemplated therein which occurred on this date and *the obligations of Neely and Service under the Agreement not yet met shall remain and the terms and conditions of the Agreement shall remain in full force and effect.*

(Emphasis supplied.) In the next five numbered paragraphs of the Addendum, they agreed, inter alia, to the following: Neely would take all action needed to comply with a specified letter from the county planning department; Service would construct a deceleration lane on State Highway 34 along the boundary of its property; Neely would relocate the power lines; Neely would grade the easement area and Service would pave it; and Neely would construct a sewer line to the edge of the property and connect the sewer line and Service would pay the impact fee for the sewer line and service. In addition to

the Addendum, Neely and Service also executed a document entitled "ACKNOWLEDGMENT & RECEIPT." This document stated in pertinent part, "[a]s part of the consideration of this sale, the contract between the parties is by reference incorporated herein and made a part hereof; *the terms and conditions contained therein shall survive the closing and shall not merge upon the delivery of the Warranty Deed*." (Emphasis supplied.)

For reasons not clear from the record, Neely never executed the restrictive covenant and continued to develop its property. In February 2002, more than two and one-half years after the closing, the lender's settlement agent contacted Neely and asked that a representative of Neely sign and execute a document entitled "Declaration of Restrictive Covenant." After Neely refused to execute the restrictive covenant, Service sued. Ultimately, the trial court found the provision enforceable, and this appeal ensued.

The construction of the provisions of a written contract is generally a matter for the trial court to decide as a matter of law. *Peachtree on Peachtree Investors v. Reed Drug Co.*[1] On appeal of such contract construction by the trial court, we conduct a de novo review of the legal issues. *Tachdjian v. Phillips.*[2]

1. In several interrelated and somewhat overlapping arguments, Neely contends that the trial court misapplied the applicable law.

(a) Neely argues that the language in the instrument may fairly be understood in more than one way and, thus, presents a triable issue for a jury. Neely claims that, at a minimum, since the terms of the contingency provision are ambiguous, a jury question exists. We do not agree.

"The existence or non-existence of an ambiguity is itself a question of law for the court." *Kusuma v. Metametrix, Inc.*[3] A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one. Id. Only in extreme cases where ambiguity remains after the application of the statutory rules for contract construction must a jury be allowed to resolve the ambiguity. *Nobel Lodging v. Holiday Hospitality Franchising.*[4] This is not such a case.

Consistent with the rule that the whole contract should be examined in arriving at the construction of any part of a contract, OCGA § 13-2-2 (4), the Addendum and the Acknowledgment must be

[1] *Peachtree on Peachtree Investors v. Reed Drug Co.*, 251 Ga. 692, 694 (1) (308 SE2d 825) (1983).
[2] *Tachdjian v. Phillips*, 256 Ga. App. 166, 168 (568 SE2d 64) (2002).
[3] *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (2) (381 SE2d 322) (1989).
[4] *Nobel Lodging v. Holiday Hospitality Franchising*, 249 Ga. App. 497, 498 (1) (548 SE2d 481) (2001).

considered along with the Agreement. See *Booker v. Hall*.[5] By executing the latter documents, Neely and Service plainly and unambiguously agreed that the unmet obligations in the Agreement would survive the closing and would not be subject to merger. Where, as here, the terms of a written contract are clear and unambiguous, "the court will look to the contract alone to find the intention of the parties." *Health Svc. Centers v. Boddy*.[6] We find no ambiguity.

(b) Neely asserts that while the Agreement conditioned Service's obligation to close the transaction on Neely's execution of a restrictive covenant, Service's failure to insist upon Neely doing so resulted in a waiver of this contingency. Citing *Davi v. Shubert*,[7] Neely claims that Service should have required the execution of the restrictive covenant as a condition of closing or have delayed the closing.

Neely's argument, however, ignores the fact that Neely executed two documents in which Neely agreed to a survival provision and a nonmerger clause. Moreover, *Davi*, supra, is factually and legally distinguishable. In that case, the purchasers of a house knew that they had been provided a nonconforming termite letter but elected to proceed with the closing. We noted that the "[p]laintiffs could have delayed the closing until they felt confident that the termite problem was under control or they could have chosen not to close. They did neither. By proceeding with the closing, they waived any right they may have had under the contract pertaining to the termite clearance letter." Id. at 421. Whereas here, on the day of closing, Service and Neely expressly recognized that certain obligations in the Agreement remained unfulfilled and entered into the Addendum and Acknowledgment, the former of which provided for the survival of obligations and the latter of which contained the nonmerger provision.

(c) Neely next argues that the contingency clause requiring that it execute an undrafted restrictive covenant is unenforceable because it was an agreement to agree. Neely asserts that "[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligations on the parties thereto." (Punctuation omitted.) *Jackson v. Easters*.[8] Neely claims that Service's failure to draft or present a restrictive covenant at the closing indicates that the creation of the restriction was only a mere possibility. Contending that essential terms of the restrictive covenant had yet to be agreed upon, Neely argues that Section 7 (a) (2) must fail for lack of sufficient definiteness and certainty. See *Southeastern Underwriters v. AFLAC, Inc.*[9]

---

[5] *Booker v. Hall*, 248 Ga. App. 639, 643 (1) (b) (548 SE2d 391) (2001).

[6] *Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (359 SE2d 659) (1987).

[7] *Davi v. Shubert*, 168 Ga. App. 420, 421 (A) (309 SE2d 415) (1983).

[8] *Jackson v. Easters*, 190 Ga. App. 713, 715 (1) (379 SE2d 610) (1989).

[9] *Southeastern Underwriters v. AFLAC, Inc.*, 210 Ga. App. 444 (436 SE2d 556) (1993).

(agreement to engage in future negotiations about commissions not enforceable). Neely complains that the phrase "the only convenience store gas station and automatic car wash in the development," is not in itself complete and requires additional terms and conditions.

On the contrary, Section 7 (a) (2) required Neely to execute "a restrictive covenant in favor of Buyer authorizing Buyer to be the only convenience store gas station and automated car wash in the development depicted on Exhibit 'A,' attached hereto and incorporated herein by reference." Notwithstanding Neely's argument to the contrary, Neely has not pointed to any terms that were lacking or otherwise indefinite. Compare *Cherokee Falls Investment v. Smith*[10] (alleged contract too indefinite to be enforced because it contained no terms defining the joint venture, the parties' obligations, or the future development of the property).

(d) Neely contends that the omission of the restrictive covenant from the items listed in the Addendum eliminated the covenant as a condition precedent of closing and excused Neely's performance from that obligation. To buttress this argument, Neely emphasizes that Service did not even raise the issue until more than two years later. Citing *Leeuwenburg v. Clark*,[11] Neely points out that "[a] survival clause in the Sales Agreement cannot breathe life into a contract where . . . the provision has been previously waived."

While it is true a party, by conduct, may waive the terms in a survival clause in an agreement, that is not what occurred here. Compare *Leeuwenburg*, supra. When certain obligations and conditions could not be fulfilled by the date of closing, Neely and Service executed an Addendum which reaffirmed the terms and conditions of the Agreement and which explicitly stipulated that "each of them shall continue to be obligated to the other for any obligations set forth in the Agreement not yet met." If Neely did not intend to fulfill its obligation to execute the restrictive covenant, when entering into the Addendum, Neely could have inserted language to exclude that particular obligation. Neely's argument lacks merit.

(e) Neely contends that the Agreement itself prohibited the imposition of a restrictive covenant because Section 9 (a) required the conveyance of fee simple title "free and clear of all restrictions, liens, and encumbrances (except as allowed under said Permitted Title Exceptions)." Neely argues that because any contingent requirement that a restrictive covenant be signed would be internally inconsistent with Section 9, the trial court erred in finding Section 7 (a) (2) to be enforceable. We disagree. The restrictive covenant

[10] *Cherokee Falls Investments v. Smith*, 213 Ga. App. 603, 605 (1) (445 SE2d 572) (1994).
[11] *Leeuwenburg v. Clark*, 228 Ga. App. 615, 616 (492 SE2d 263) (1997).

at issue did not encumber Service's land but affected Neely's remaining property. There was no internal inconsistency.

2. Neely's remaining argument is now moot.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED MAY 13, 2003.

*Decker & Hallman, F. Edwin Hallman, Jr., Harry K. Buttermore III*, for appellant.

*Hawkins & Parnell, Emory L. Palmer, H. Lane Young II, Lightmas & Delk, Glenn A. Delk*, for appellee.